## UNITED STATES DISTRICT COURTF
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| MARQUIS DESHAWN FRANCIS, | Case No.: |
| Plaintiff, | |
| vs. | |
| STERLING INFOSYSTEMS, INC., CLEARSTAR, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Marquis Deshawn Francis ("Plaintiff" or "Mr. Francis") by and through his counsel brings the following Complaint against Sterling Infosystems, Inc. ("Defendant Sterling") and ClearStar, Inc. ("Defendant ClearStar") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of employment purpose consumer reports, also known as background check reports, that Defendants published to Plaintiff's potential employers, which falsely portrayed Plaintiff as a convicted rapist.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendants are consumer reporting agencies ("CRA") that compile and maintain files on consumers on a nationwide basis. They sell consumer reports generated from their database and furnish these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendants falsely reported to Plaintiff's prospective employers that Plaintiff was convicted of "burglary – enter house to rape etc."  Defendants' reporting made it appear that Plaintiff's crime was sexual in nature, which is grossly inaccurate, materially misleading, and untrue.

4.      Plaintiff was convicted of burglary under VA Penal Code 18.2-90, the name of the Statute is as follows, "entering dwelling house, etc., with the intent to commit murder, rape, robbery, or arson."

5.      However, widely-available public records make it clear that Plaintiff had no intent to rape, but his intent was to rob the dwelling.

6.      Plaintiff's Sentencing Order states the offense description as "burglary" only.

7.      Plaintiff's prospective employers denied Plaintiff's job applications after receiving consumer reports  from Defendants, which included the inaccurate and materially misleading offense as "burglary – enter house to rape etc.," making it look like Plaintiff is a rapist, which he is not.

8.      Defendants' inaccurate and materially misleading reporting could have easily been avoided had Defendants performed a cursory review of the widely-available public court records pertaining to the burglary prior to publishing Plaintiff's report to his prospective employers.

9.      Had Defendants performed even a cursory review of the actual  court records, they would have discovered that Plaintiff had no intent to commit rape.

10.     Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failure to employ

reasonable procedures resulted in Plaintiff's report being grossly inaccurate and materially misleading.

11.     Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12.     Defendants' inaccurate and materially misleading reports cost Plaintiff good paying jobs and job security.

13.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his consumer  reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14.     As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

15.     Marquis Deshawn Francis ("Plaintiff" or "Mr. Francis") is a natural person residing in Virginia Beach, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Sterling Infosystems, Inc. ("Defendant Sterling" or "Sterling") is a foreign corporation with a principal place of business located at 6150 Oak Tree Blvd Ste 490,

Independence, OH, 44131 – 6976.  Defendant may be served through its Virginia registered agent, c/o Paracorp Incorporated, located at 7288 Hanover Green Dr., Mechanicsville, VA 23111.

17.     Among other things, Defendant Sterling sells employment purpose consumer reports, also known as background checks, to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.  These reports are provided in connection with a business transaction initiated by the employer.

18.     Defendant ClearStar, Inc. ("Defendant ClearStar" or "ClearStar") is a Delaware corporation doing business throughout the United States, including the State of Virginia and in this District, and has a principal place of business located at 6250 Shiloh Road, Suite 300, Alpharetta, GA 30005. Defendant may be served through its registered agent, c/o Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corner, GA 30092.

19.     Among other things, Defendant ClearStar sells employment purpose consumer reports, also known as background checks, to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.  These reports are provided in connection with a business transaction initiated by the employer.

20.     Defendants are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

23.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

24.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

25.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

26.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

27.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendants prepared in Plaintiff's name.

28.     The FCRA provides a number of protections for job applicants who are the subject of consumer reports for purposes of securing employment, housing, and other purposes.

29.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendants, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

30.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

31.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

32.     Defendants disregarded their duties under the FCRA with respect to Plaintiff's consumer report.

**DEFENDANTS' ILLEGAL BUSINESS PRACTICES**

33.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

34.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

35.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

36.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

37.     Background check companies, like Defendants, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

38.     Given that Defendants are in the business of selling consumer reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

39.     Defendants places their business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to produce reports containing

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

40.     Defendants report such erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

41.     Defendants charge their customers the same price for reports that are grossly inaccurate as it does for accurate reports.

42.     Appropriate quality control review of Plaintiff's reports would have made clear that Defendants were portraying Plaintiff as a rapist when he is not.

43.     As a provider of background check reports, Defendants should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

44.     Defendant Sterling is "accredited" by the PBSA.[3]

45.     Defendant ClearStar holds itself out to be a founding member of the PBSA and celebrating 20 years as a member.[4]

### FACTS

**Plaintiff Applies for a Job with 7-Eleven, Inc.**

---

[3] https://thepbsa.org/
[4]     https://www.clearstar.net/clearstar-to-help-professional-background-screening-association-pbsa-celebrate-20-years-at-2023-pbsa-annual-conference/

46.     In or around September 2022, Plaintiff applied for full-time employment as a Cashier/Sales Associate with 7-Eleven, Inc ("7-Eleven").  The position paid around twelve dollars an hour.

47.     Upon information and belief, Plaintiff received a conditional job offer contingent upon a background check.

**Defendant Sterling Published an Inaccurate**
**Background Check Report to 7-Eleven**

48.     7-Eleven contracted with Defendant Sterling to conduct consumer reports including criminal background checks, on its prospective employees.

49.     On or about September 18, 2022, 7-Eleven ordered a consumer report on Plaintiff from Defendant Sterling.

50.     On or about November 4, 2022, in accordance with its standard procedures, Defendant Sterling completed its consumer report about Plaintiff and sold the same to 7-Eleven.

51.     Within that consumer report, Defendant Sterling published inaccurate and materially misleading information about Plaintiff.

52.     Specifically, Defendant Sterling's consumer report about Plaintiff reported Plaintiff's burglary conviction as grossly inaccurate and materially misleading, which appeared in the consumer report as follows:

| | |
|---|---|
| Violation Date | 2016-09-24 |
| Type | Felony |
| Original Charge | Burglary - Enter House To Rape Etc. |
| Disposition | Guilty |
| Comments | Charge Statute: 18.2-90 |

53.     The Original Charge "Burglary - Enter House to Rape Etc."  reported by Defendant Sterling about Plaintiff is materially misleading and grossly inaccurate because it makes it appear that Plaintiff's crime was sexual in nature.

54.     Plaintiff has never been convicted of attempted rape or rape in his life.

55.     A cursory review of the widely available public court records confirms that Plaintiff was convicted of burglary only. The public record shows that in Plaintiff's sentencing order the offense is described as "burglary."

On 08/29/2018, the defendant was found GUILTY of the following offense:

| OFFENSE DESCRIPTION | OFFENSE DATE | CODE SECTION | CRIME CODE REFERENCE |
|---|---|---|---|
| Use of a Firearm in the Commission of a Burglary | 09/24/2016 | 18.2-53.1 | ASL-1319-F9 |
| Conspiracy to Commit a Burglary | 09/24/2016 | 18.2-22; 18.2-90; 18.2-10 | BUR-2211-C3 |
| Burglary | 09/24/2016 | 18.2-90; 18.2-10 | BUR-2211-F3 |
| Use of a Firearm in the Commission or Attempted Commission of a Robbery of Jerry Sanders | 09/24/2016 | 18.2-53.1 | ASL-1319-F9 |

56.     The sole reason the grossly inaccurate and materially misleading conviction of "burglary - enter house to rape etc." was reported was that Defendant Sterling failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

57.     Had Defendant Sterling followed reasonable procedures, it would have discovered that Plaintiff's conviction was for burglary only and that there was no sexual intent connected to the crime and that it should not have reported the same.

58.     In preparing and selling a consumer report about Plaintiff, wherein Defendant Sterling published to Plaintiff's prospective employer grossly inaccurate and materially misleading information about Plaintiff, Defendant Sterling failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**7-Eleven Denies Plaintiff's Job Application**

59.     Upon information and belief, 7-Eleven withdrew Plaintiff's job offer and removed his application from consideration based on the grossly inaccurate and materially misleading Sterling report.

60.     Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked upon reviewing the "burglary-enter house to rape etc."  conviction contained within the subject consumer report.

61.      Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate and materially misleading reporting that portrayed him as a rapist, both in relation to the 7-Eleven position, but also the impact of the same on his future.

62.     Specifically, Defendant reported "burglary - enter house to rape etc." making it appear that Plaintiff is a rapist. Public records clearly show that Plaintiff had no intent to rape. Plaintiff's sentencing order states under the offense description as "burglary" only.  The widely available public records were available to Defendant prior to publishing Plaintiff's consumer

report to 7-Eleven, but Defendant failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Inaccurate and Materially Misleading Information in Defendant Sterling's Consumer Report

63.     On December 6, 2023, riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant Sterling. Plaintiff disputed via email with Defendant.

64.     Plaintiff identified himself and provided information to Defendant Sterling to support his dispute.  Plaintiff provided Defendant with his identification card and Court records from his burglary conviction.

65.     Plaintiff specifically disputed the inaccurate and materially misleading reporting portraying him as a rapist and explained that it was grossly inaccurate and materially misleading because he had no intent to commit rape and his offense was described as burglary only.  Plaintiff specifically asked Defendant Sterling to investigate and correct its reporting in any consumer report about Plaintiff.

66.     On January 2, 2024, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the reporting of the criminal record from "burglary-enter house to rape etc." to "Conspiracy to commit burglary."

67.     Plaintiff reasonably believes that due to Defendant Sterling's inaccurate and materially misleading reporting in the first instance, 7-Eleven formed a negative opinion about Plaintiff and/or moved on to other candidates.

68.     Defendant's false consumer report cost Plaintiff a promising, well-paying job with 7-Eleven.

**Plaintiff Applies for a Job with Lids**

69.     In or around March 2023, Plaintiff applied for full-time employment as an assistant manager with Lids.  The position paid around fourteen dollars an hour.

70.     As part of the hiring process Lids performs background checks.

**Defendant ClearStar Published an Inaccurate
Consumer Report to Lids**

71.     Lids contracted with Defendant ClearStar to conduct consumer reports, including criminal background checks, on its prospective employees.

72.     On or about March 9, 2023, Lids ordered a consumer report on Plaintiff from Defendant ClearStar.

73.     On or about March 10, 2023, in accordance with its standard procedures, Defendant ClearStar completed its consumer report about Plaintiff and sold the same to Lids.

74.     Within that consumer report, Defendant ClearStar published inaccurate and materially misleading information about Plaintiff.

75.     Specifically, Defendant ClearStar's consumer report about Plaintiff reported Plaintiff's burglary conviction as grossly inaccurate and materially misleading, which appeared in the employment report as follows:

Found In: VIRGINIA BEACH CITY/Virginia Beach Circuit
Case Number: CR17000364-16
Matched By: First Name, Middle Name, Last Name, DOB
Name On File: FRANCIS, MARQUIS DESHAWN
DOB On File: ███████
Gender On File: Male
Address On File: VIRGINIA BEACH, VA 23464
Case Comments: Case Status: Trial - Judge With Witness
Charge 1: BURGLARY ENTER HOUSE TO RAPE ETC.
Charge Type: FELONY
Charge Date: 1/25/2018
Disposition: GUILTY
Disposition Date: 2/19/2019
Fine: 0.0000
Costs: 0.0000

76.     The Charge "Burglary - Enter House to Rape Etc." reported by Defendant ClearStar about Plaintiff is grossly inaccurate and materially misleading because it makes it appear that Plaintiff's crime was sexual in nature.

77.     Plaintiff has never been convicted of attempted rape or rape in his life.

78.     A cursory review of the widely available underlying public court records confirms that Plaintiff was convicted of burglary only.  The public record shows that in Plaintiff's sentencing order the offense is described as "burglary."

On 08/29/2018, the defendant was found GUILTY of the following offense:

| OFFENSE DESCRIPTION | OFFENSE DATE | CODE SECTION | CRIME CODE REFERENCE |
|---|---|---|---|
| Use of a Firearm in the Commission of a Burglary | 09/24/2016 | 18.2-53.1 | ASL-1319-F9 |
| Conspiracy to Commit a Burglary | 09/24/2016 | 18.2-22; 18.2-90; 18.2-10 | BUR-2211-C3 |
| Burglary | 09/24/2016 | 18.2-90; 18.2-10 | BUR-2211-F3 |
| Use of a Firearm in the Commission or Attempted Commission of a Robbery of Jerry Sanders | 09/24/2016 | 18.2-53.1 | ASL-1319-F9 |

79.     The sole reason the grossly inaccurate and materially misleading conviction of "burglary - enter house to rape etc." was reported was that Defendant ClearStar failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

80.     Had Defendant ClearStar followed reasonable procedures, it would have discovered that Plaintiff's conviction was for burglary only and that there was no sexual intent connected to the crime and that it should not have reported the same.

81.     In preparing and selling a consumer report about Plaintiff, wherein Defendant ClearStar published to Plaintiff's prospective employer inaccurate and materially misleading information about Plaintiff, Defendant ClearStar failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Lids Denies Plaintiff's Job Application**

82.     On or about March 13, 2023, Plaintiff received an email from Lids letting Plaintiff know that they were taking adverse action based on the consumer report they received from ClearStar.

83.     A copy of Plaintiff's consumer report was included in the email. Plaintiff was shocked upon reviewing the "burglary-enter house to rape etc."  conviction contained within the subject consumer report.

84.     Upon information and belief, Lids removed Plaintiff from consideration for the assistant manager position based on the grossly inaccurate and materially misleading ClearStar report.

85.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that portrayed him as a rapist, both in relation to the Lids position, but also the impact of the same on his future.

86.     Specifically, Defendant reported "burglary - enter house to rape etc." making it appear that Plaintiff is a rapist.   The widely available public records clearly show that Plaintiff

had no intent to rape.  Plaintiff's sentencing order states under the offense description as "burglary" only.  The actual court records were available to Defendant prior to publishing Plaintiff's employment report to Lids, but Defendant failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Materially Misleading and Inaccurate Information in Defendant ClearStar's Consumer Report

87.     On December 6, 2023, riddled with worry over the far-reaching impacts of the grossly inaccurate and materially misleading information, Plaintiff disputed the grossly inaccurate and materially misleading information with Defendant ClearStar.  Plaintiff disputed via email with Defendant.

88.     Plaintiff identified himself and provided information to Defendant ClearStar to support his dispute.  Plaintiff provided Defendant with his identification card and Court records from his burglary conviction.

89.     Plaintiff specifically disputed the materially misleading and inaccurate reporting portraying him as a rapist and explained that it was misleading and inaccurate because he had no intent to commit rape and his offense was described as burglary only.

90.     Plaintiff specifically asked Defendant ClearStar to investigate and correct its reporting in any consumer report about Plaintiff.

91.     On Dec. 19, 2023, ClearStar sent an email to Plaintiff confirming they had completed their reinvestigation. They also attached an updated consumer report. The email stated that they contacted the court regarding the wording of the offense and Virginia law includes each act within the statute, regardless of intent. They also stated that ClearStar confirmed this with the

Circuit Court clerk. The updated report now lists the charge as "Statutory Burglary Entering House to Commit Robbery or Murder or Rape or Arson."

92.     Defendant ClearStar also communicated to Plaintiff that it had issued a corrected consumer report to Lids.

93.     Upon info and belief, Plaintiff hasn't heard from Lids since the Clearstar consumer report was corrected.

94.     Plaintiff reasonably believes that due to Defendant ClearStar's inaccurate reporting in the first instance, Lids formed a negative opinion about Plaintiff and/or moved on to other candidates.

95.     Defendant ClearStar's false consumer report cost Plaintiff a promising, well-paying job with Lids.

96.     In or around January 2024, Plaintiff's was able to secure a job through a temp service agency for much lower pay. The temp service agency initially stated that after 90 days, Plaintiff will need to have a background check completed to be considered for a permanent position. Unfortunately, Plaintiff was laid off after 3 days of work.

97.     Plaintiff is feeling very defeated and frustrated and is desperate for steady income and a reliable job.

98.     Due to the lack of income, Plaintiff has been unable to pay his bills and has had accounts sent to collections which is impacting his credit.

99.     Without income, Plaintiff has not been able to make payments to the court, resulting in court fines.

100.    Also, since Plaintiff lacks income he has been unable to find his own housing and must live wherever he can.

101.    Additionally, Plaintiff does not have income sufficient to get new glasses.  Without new glasses, Plaintiff cannot get a driver's license.

102.    Plaintiff has had problems sleeping and this situation has exacerbated his depression and anxiety.  He has felt hopeless and angry about the situation.

103.    The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

104.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

106.    Defendants are "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f).

107.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

108.   At all times pertinent hereto, the above-mentioned employment reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

109.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer reports they sold about Plaintiff as well as the information they published within the same.

110.   The consumer reports Defendants provided Plaintiff's prospective employers included grossly inaccurate and materially misleading criminal records that conflicted with the information widely available in the public records.

111.   The consumer information Defendants transmitted to Plaintiff's prospective employers was based on public records information that it knew was not complete and the accuracy of which was expressly disclaimed by Virginia's electronic records system and the Office of the Executive Secretary of the Supreme Court of Virginia.

112.   The Virginia electronic records system and the Office of the Executive Secretary of the Supreme Court of Virginia have disclaimers of accuracy in their contracts with third party vendors and on the website that the only source of information that can be relied on is the actual court records from the Court Clerk in the originating jurisdiction.

113.   Had Defendants reviewed the actual court records, Defendants would have seen that Plaintiff was convicted of burglary only with no intent to rape.

114.   As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

115.    Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

116.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 21, 2024

Respectfully Submitted,

**Marquis Deshawn Francis**

*/s/ Susan Mary Rotkis*
Susan Mary Rotkis, VSB 40693
**CONSUMER ATTORNEYS**
2290 East Speedway Blvd.
Tucson, AZ 85719
Direct: 602-807-1@504
Facsimile: 718-715-1750
E-mail: srotkis@consumerattorneys.com

*Attorney for Plaintiff,*
*Marquis Deshawn Francis*